ROSS, JR., ET AL., v. PURSE, SR.

1. PURCHASE OF LEGAL TITLE WITH NOTICE OF ADVERSE CLAIMS. —One acquiring the legal title to ground with notice of the possession, claim of ownership, and pending attempts to correct the defective description by a person other than his grantor takes the title subject to the rights of the adverse claimant.

2. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS.—A written memorandum by the grantor agreeing to convey the legal title to his grantee who has purchased, paid for, and reduced to peaceable possession property which by mistake was omitted from the original deed, does not evidence a contract for the sale of land within the meaning of the statute of frauds. And the technical rules relating to specific performance, where no part performance has taken place, are inapplicable.

3. EQUITABLE RELIEF BASED ON PLEADING AND PROOF.—Courts award the plaintiff any relief to which his pleading and proof entitle him, regardless of the prayer of his complaint.

4. PREREQUISITES TO DECREE FOR SPECIFIC PERFORMANCE.—The four things that must appear in contracts as prerequisites to a decree for specific performance are the names of the parties, the terms and conditions, the interest or property, and the consideration.

5. HOW PREMISES MAY BE IDENTIFIED.—If the written instrument contain *indicia* by reference to which, coupled with the defective description otherwise, the identity of the premises can reasonably be determined, specific performance may be decreed.

6. WHEN STATEMENT OF CONSIDERATION SUFFICIENT.—The statement of the consideration is sufficient if a way be clearly pointed out for determining the same, even though the precise character or amount thereof be left unexpressed.

7. CONSTRUCTION OF DEFECTIVE CONTRACT TO DIG A WELL.—Where the writing requires the digging of a well without specifying its depth or the character of the timbering, it will be held to call for a well so constructed as to be suitable for the usual and ordinary purposes of such an improvement in the particular locality specified. And where such well is to be upon lots 8 and 9, it is to be upon whatever part of the tract the owner for whose use it is dug shall designate.

*Appeal from District Court of Arapahoe County.*

COMPLAINT by appellants for specific performance.   General demurrer thereto by appellee sustained.   Judgment

dismissing the suit and for costs in favor of appellee.    Facts sufficiently stated in the opinion.

Mr. D. S. BENTON, for appellants.

Mr. ENOS MILES, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

For the purposes of the present decision all material averments of fact in the complaint are admitted by the demurrer, and must be taken as true.    We shall, therefore, assume the truthfulness of the matters thus alleged and review the case now presented as if they had been established by proof.

Ross, Jr., and Purse did not meet as strangers and execute the writing we are about to consider, as evidence of an ordinary contract of purchase.    Ross, for a valuable consideration, duly paid, bought of one Perky, lots 10 and 11 in the block 47 mentioned, lot 10 having upon it at the time a brick dwelling-house.    Through mutual mistake, the deed specified lots 11 and 12 instead of lots 10 and 11.    Ross, however, immediately moved into the house upon lot 10 and remained in the peaceable and exclusive possession thereof continuously to the date of trial, a period of nearly three years.    Upon discovering the mistake two years subsequent to the original purchase, Ross began negotiations with Perky for the purpose of having it corrected.    Pending these negotiations Purse acquired the legal title to lot 10 with full notice of Ross's possession, claim of ownership, and attempts to correct the defective description.

After the acquisition of title by Purse, the negotiations theretofore pending between Ross and Perky were continued between Ross and Purse, resulting in the written instrument above mentioned, which reads as follows:

"DENVER, Colo., December 7, 1887.

" I hereby agree to give St. Clair Ross Jr. a deed to lot No. 10 in Block No. 47, in Swansea, 1st. Ad., and he is to dig

me a well on Lots 8 and 9, same block and addition, and St. Clair Ross Sr. is also to deed unto me Lot No. 8 in said block and addition.          JOHN PURSE SR."

This instrument was duly executed by Purse and delivered to Ross. It is unskilfully drawn, and so far as mere form is concerned, invites much of the criticism offered by counsel for appellee. But it is the direct outgrowth of the transactions narrated and should be viewed in connection therewith.

Purse merely stepped into the shoes of Perky, and the discussion will proceed precisely as if Perky had retained the legal title and were the party defendant.

Thus it appears that the written instrument in question does not evidence a contract for the leasing of land, nor one for the sale of an interest therein. It is simply an agreement to complete the execution of the original contract of purchase which through inadvertence and mistake was left in an imperfect condition. Ross, Jr., was not seeking to buy lot 10; he had already bought this lot, performing his part of the contract of purchase by payment of the consideration therefor, and in pursuance of the purchase had entered into possession of the premises. Purse did not profess to sell the lot to Ross; he could not deny Ross's equitable ownership, but evidently insisted upon certain terms as conditions precedent to the recognition by deed of that ownership. Thus the writing in question was a mere memorandum evidencing an arrangement whereby Ross was to obtain the formal conveyance of the legal title of property which he had previously bought, paid for, and reduced to peaceable possession.

Had Purse refused to make a settlement, or had Ross refused to compromise by accepting the proposed conditions, the latter could have compelled the former through judicial proceedings to recognize his ownership. A court of equity under the remaining facts as at present admitted would in case of such refusal have decreed either a reformation of the original deed correcting the mistake, or a trust in favor of Ross. Since, as already observed, the writing before us does

not evidence a contract of leasing or of sale with reference to land, and since the original contract of purchase of which it is simply a part was performed by Ross, we do not think the rules governing the construction of contracts for the purchase of land .where there has been no part performance are applicable. Yet the court below must have denied relief upon the theory that these rules are pertinent and that the instrument is too imperfect to justify a decree for plaintiff. Plaintiff asked, it is true, that the written agreement be reformed and specifically enforced. But under our system of procedure, courts award any relief to which .plaintiff's pleading and proof entitled him, regardless of the prayer embodied in his complaint.

If, however, the foregoing matters were discarded .from consideration, and if the instrument before us stood alone as the evidence of an independent contract of purchase, we would not order an affirmance. The four things that must appear in such contracts as essential prerequisites to suits for specific performance, are, *first*, the names of the parties; *second*, the terms and conditions; *third*, the interest or property; and fourth, the consideration. *Eppich v. Clifford*,. 6 Colo. 493. Doubt is sought to be cast upon this instrument in but two particulars, viz., insufficiency in the description: of the property, and ambiguity in the statement of the consideration.

It is said that because no county and state are mentioned, the location of lot 10 cannot be fixed with sufficient definiteness without a violation of the statute of frauds and the manifest transgression of a well known rule of evidence. The failure to name the county and state is not necessarily. fatal, even if no reliance whatever be placed upon the fact of Ross's undisturbed occupancy of the premises. The instrument is dated in Denver, Colo., thus showing *prima facie* among other things that the transactions were concluded in Arapahoe county. By law in this state plats of towns and additions are required to be filed with the clerk and recorder of the county in which they are situate. These plats show

with reference to government surveys, the specific territory platted. We may assume from the writing that Swansea was such a town; and that a plat had been filed showing its blocks, lots, streets and alleys; also that the First Addition to Swansea was in like manner laid out and recorded. An interested party would have experienced no serious difficulty in determining the exact location of the premises under consideration. In *Robson et al. v. Hornbaker*, 3 N. J. Eq. Rep. 60, the suit was maintained though the description was more indefinite and imperfect than that in the case at bar. The subject-matter of the sale there considered consisted of forty acres of land which were described by lines starting at a corner *to be made* in the middle of a certain road, running in certain directions, crossing a certain stream, intersecting a certain old survey line at the top of a hill near a chestnut tree, etc. No mention was made of any township or county or even of the state. See also cases cited in the opinion, especially *Barry v. Coombe*, 1 Peters, 640, where the following instrument in the vendor's handwriting, signed by the vendee given in the settlement of an account, was held sufficient to support an action for specific performance: " By my purchase of your half of E. B. wharf and premises, this day, as agreed on between us, $7,578.63." The doctrine of the latter case may be substantially stated as follows: If the writing contains *indicia* by reference to which, coupled with the defective designation otherwise, the identity of the premises can reasonably be determined, specific performance may be decreed.

The statement of the consideration in the instrument before us is challenged upon the ground that the kind of well to be dug and the particular spot on lots 8 and 9 where it is to be located are not designated. This objection is hardly equal in dignity or force to the one just disposed of. With reference to the consideration, we observe parenthetically in passing, that greater liberality is recognized than in connection with the other elements of these contracts. The writing is sufficient if a way be clearly pointed out for de-

termining the consideration, even though the precise charac-
ter or amount thereof be left unexpressed. It was not
necessary to designate the specific object for which the well
was to be dug, or the kind of material to be employed in its
construction. The failure to state whether the water was
to be used for domestic purposes purely, or for stock raising
or for irrigation could not be a matter of such vital impor-
tance as to defeat the action. And a court of equity would
certainly not refuse to decree specific performance simply
because the depth of the well and the character of the mate-
rial to be used in timbering or walling are not specified.
The contract would be construed as calling for a well so
constructed as to be suitable for the usual and ordinary pur-
poses of such an improvement in that locality. In the case
of *Lawrence v. Saratoga Lake Ry. Co.*, 36 Hun, 467, the con-
tract provided that the railway company should construct
and maintain a bridge, without specifying anything concern-
ing the manner of its construction or the material to be used.
Although two such bridges were required, and although the
contract was equally indefinite as to the material and man-
ner of construction of a station building also provided for,
the court declared that specific performance might be de-
creed. Though the fact incidentally appears that there had
been a part performance, it is not relied on. In the course
of the opinion it is remarked, that " To insist that the rail-
way cannot build a bridge because they do not know whether
it should be of wood or iron or gold or platinum, is a poor
excuse. A bridge suitable for a highway crossing is what
is intended, and that is definite enough. * * * If defen-
dant were willing to perform its agreement, it would have
no difficulty in understanding its obligation." See also
the other cases carefully collected in the same opinion.

The well specified in the instrument before us was to be
dug upon lots 8 and 9 of the same block and addition. This
is definite enough as to location. It being for the use of
Purse and upon premises of which he was or would be the
owner, the clear intent was that it should be placed upon

whatever part of the tract described as lots 8 and 9 Purse designated. It was in harmony with this plain interpretation that Ross requested Purse to point out where he should dig the well, in order that he might perform the duties imposed upon him by the instrument.

The demurrer should have been overruled, and the judgment is accordingly reversed.

*Reversed.*