## COUCH v. McCOY et al.

(Circuit Court, S. D. West Virginia. June 21, 1905.)

1. VENDOR AND PURCHASER—OFFER OF OPTION—RIGHT OF WITHDRAWAL.

An offer of an option to purchase real estate, until it has become a completed option contract by acceptance in accordance with its terms and the payment of a consideration, is subject to the same rules as an offer to sell, and may be withdrawn at any time.

2. SAME—OPTION TO PURCHASE—CONSTRUCTION AND EFFECT.

An option contract for the purchase of real estate, if complete and certain as to its terms, and based on a valuable consideration paid, is converted into a contract of sale, which may be specifically enforced in equity by an acceptance by the vendee in accordance with the terms, and within the time limited therein. The purpose and effect of the option contract is the surrender by the vendor, for a consideration and for the time limited, of the right which he would otherwise have to withdraw the offer of sale contained therein.

3. SAME—ESSENTIALS OF OPTION CONTRACT—REDUCTION TO WRITING.

An offer to give an option to purchase real estate, where a written contract embodying the terms of the option is clearly contemplated by both parties, or by the party giving it, does not constitute a contract binding upon either party until such writing has been duly executed.

4. SAME.

After some correspondence between the parties with respect to the purchase of certain lands, complainant received from defendant, who resided in another state, a telegram as follows: "For fifty dollars will give sixty day option at twenty-five thousand dollars." To this he replied: "Forward sixty day option to-day First National Bank, Ronceverte." He also wrote on the same day as follows: "As I have but a few days in which to make my decision I decided to wire you to forward option at the price named and as soon as said paper arrives I will make investigation of your property and write you immediately on my return to Ronceverte." No paper was executed, and defendant subsequently withdrew the offer. *Held*, that no binding option contract, enforceable in equity, was made, first, because the offer, in the absence of an agreement to the contrary, required payment of the $50 to be made at the place of defendant's residence, and complainant's telegram and letter were not, therefore, an unconditional acceptance; and, second, because it was not contemplated that such contract should be created until formally executed in writing.

In Equity. On demurrer to bill.

This is a suit for the specific performance of a contract for the sale of lands, alleged by the plaintiff to exist by reason of certain written and telegraphic correspondence between him and the defendant W. J. McCoy, which correspondence, it is asserted in the bill, amounted to a valid 60-days option to the plaintiff to purchase the lands described in the bill, and which option the plaintiff duly accepted within said 60 days. The suit was originally brought by the plaintiff in the circuit court of Greenbrier county, W. Va., and was removed by the defendants to this court, after which removal an amended bill was filed in the cause. The material facts set up in the amended bill as showing grounds for the relief prayed in the bill are as follows:

That in the winter of 1903 plaintiff became interested in the possible development of certain lands in Greenbrier county, W. Va., and the construction

of railways to said lands, all of which, if successfully carried out, would require the expenditure of a large sum of money. That, to secure such a body of land as would render such expenditure desirable, it was necessary that plaintiff acquire many small tracts of land lying practically contiguous to each other. That, in his examination of a tract of 275 acres owned by J. C. McCoy and W. A. Brown, he ascertained that the defendant W. J. McCoy and others jointly interested with him owned three tracts of land adjacent to said 275-acre tract, and containing respectively 429, 336, and 943 acres, which tracts are known as the James McCoy lands. That about January 1, 1904, he entered into correspondence with defendant W. J. McCoy, as part owner of said lands and as agent for all of the other defendants, with a view to secure an option to purchase the said lands, and, as it required considerable time for said W. J. McCoy to communicate with his co-owners, "your orator, being desirous of obtaining such option and closing up the same without loss of time, your orator instructed the president and cashier of the First National Bank of Ronceverte, West Virginia, that should a sixty-days option to the plaintiff for said land be mailed to the bank by said W. J. McCoy, fixing a price thereon which was at all reasonable, that said bank should, out of the funds of your orator deposited therein, which largely exceeded said sum, pay to the said W. J. McCoy or his order $50 for said option, and your orator wrote to said McCoy informing him of this arrangement, and that the money was deposited in said bank for said purpose, and requested him to send said option to said bank." That, no such option having been received at said bank, the plaintiff, about March 2, 1904, caused J. C. McCoy, who is a cousin of said W. J. McCoy, to send for plaintiff a telegram to W. J. McCoy to the effect that the plaintiff was then in Ronceverte, and that unless an option was secured promptly the chance of a sale to him would be lost. That on March 3, 1904, said W. J. McCoy telegraphed said J. C. McCoy as follows:

"For fifty dollars will give sixty day option at twenty-five thousand dollars."

That on March 3, 1904 said W. J. McCoy also forwarded to said plaintiff two letters which read as follows:

"Dear Sir: I assume J. C. McCoy has shown you my telegram. I would explain delay by stating that not until after the receipt of his telegram did I succeed in getting consent of the last party interested, to name the figure mentioned,—$25000.00.

"If the option on that basis is desired please inform me to that effect.
"Respectfully yours,                          W. J. McCoy."

"Dear Sir: In my letter to you mailed this P. M., I should have added that the option referred to would mean one-third cash, balance, if desired, in one and two years, in equal installments, with 6% interest, payable annually, on the deferred payments.
"Resp'ly yours,                          W. J. McCoy."

That upon seeing the telegram to said J. C. McCoy, plaintiff at once, on the 3d day of March, 1904, sent the following telegram to said W. J. McCoy:

"Your telegram just handed me, forward sixty day option to-day First National Bank, Ronceverte.                          [Signed]  C. B. Couch."

The bill further avers that on the same day the plaintiff wrote said W. J. McCoy accepting the option at said price, "and informing said McCoy that said sum was deposited at said bank and would be forwarded by it on receipt of option," etc. The letter referred to is exhibited with the bill, but does not contain any part of the language above quoted from the bill, but reads as follows:

"Your telegram to Mr. J. C. McCoy was handed me this morning and I was surprised at the price you placed upon your property inasmuch as your cousin J. C. McCoy whose land adjoins this had priced me his property at $10 per acre. However as I have but a few days in which to make my decision I decided to wire you to forward option at the price named and as soon as said paper arrives I will make investigation of your property and write you immediately on my return to Ronceverte.

"If you have not already forwarded option please do so at once as I have to give answer to other parties very shortly."

That on March 9, 1904, plaintiff received a telegram from said W. J. Mc-

Coy, stating that he could not send option at price named, to which he at once replied by wire as follows:

"Telegram to Charleston received. Have relied on your statements. Must hold you thereto. Am ready to take lands on terms mentioned."

On the same day W. J. McCoy replied by telegraph:

"As heretofore notified you deal is off."

On the 14th of March, 1904, Mr. Couch wrote the following letter to Mr. McCoy, which closes the correspondence exhibited with the bill:

"Dear Sir: Your telegram to me calling off trade between us was certainly a great surprise to me. I went into the matter in good faith and asked you for price on your and your co-owners' land in Greenbrier County, this State. Immediately upon receipt of your telegram to Mr. J. C. McCoy, which was sent at my request, I accepted the offer named in your telegram and went to considerable expense in sending engineers to survey and examine the property before I received your telegram declining to carry out your agreement. On March 8th I wired you that I was prepared to take the land upon the terms agreed upon, and I now write to confirm that telegram. I am prepared to take and pay you for the land upon the terms agreed upon, namely, one-third cash and the balance in one and two years, and in justice to myself I shall have to insist upon your complying with your agreement. As a matter of protection to myself, I have instituted suit for the specific performance of your contract, and have filed a Lis Pendens on the records in Greenbrier County.

"I believe if you will give this matter your consideration that you will recognize both your moral and legal obligation to convey to me this land in compliance with your agreement, and you will thus save the expense of a litigation which I shall have to prosecute to enforce my rights in the matter.

"Trusting that you will take this view of the matter, I remain," etc.

Before passing to a discussion of the case as the same is before me, I call attention to the fact that the above-quoted letter states that Mr. Couch wired acceptance of the land on March 8th. This is evidently an error, as his telegram was not sent until March 9th, and after the receipt of a telegram from McCoy withdrawing offer of option.

Mollohan, McClintic & Mathews and Geo. E. Price, for plaintiff.

Brown, Jackson & Knight and W. J. McCoy, in pro. per., for defendants.

KELLER, District Judge (after making foregoing statement). This case is now before me upon demurrer to the bill, and, as a matter of course, all the facts well pleaded in the bill are, for the purposes of the demurrer, to be taken as literally true; and I think these facts, relieved of certain minor contradictions appearing in the bill itself, are substantially set forth in the foregoing statement.

It is well at the outset to distinguish between an offer of an option and an offer of sale. It is indisputable that had a 60-day option, upon the terms set forth in the telegram exhibited with the bill, been offered by Mr. McCoy without consideration, it might have been withdrawn by him at any time, provided such withdrawal had been communicated to the plaintiff prior to his acceptance of the same; and by this I mean the acceptance of the proffer to sell, for until such acceptance there is no contract, as the proposed vendee is not in any way bound, and unless both are bound, so that an action could be maintained against either for a breach, neither is bound. Mr. Bishop, in his work on Contracts, § 325, says:

"Since an offer is not a contract, the party making it may withdraw it at any time before acceptance. Even though it is in writing, and by its terms is to stand open for a specified period, the result is the same. With no money

consideration, and no corresponding promise from the person to whom it is made, the promise not to withdraw it has no binding force. If a consideration for the undertaking to leave the offer open is given and accepted, this of itself constitutes a contract, and the offer cannot be withdrawn."

It is then manifest that an offer of an option, until accepted according to its terms, is no more binding than an offer of sale without consideration, and may be withdrawn unless prior to such withdrawal it be so accepted. There are then two elements in every option contract: First, the offer to sell, which does not become a contract unless and until accepted according to its terms; and, second, the completed contract to leave the offer open for a specified time, and this, as will be shown, in order to become a completed contract, must be for some consideration deemed valuable in law. The very existence of option contracts arose because of the liability of the withdrawal of offers to sell before they were formally accepted, and it thus becomes manifest that an offer of an option, until it is turned into a completed option contract by acceptance in accordance with its terms, and the payment or tender of the consideration therefor, is entirely subject to the same rules in regard to withdrawal as the plain offer to sell. It therefore becomes important in the case at bar to determine whether there was a valid and binding (that is, a completed) contract of option existing between the plaintiff and the defendant W. J. McCoy.

In the argument before me, considerable time was spent in discussing the question whether Mr. Couch, in his telegram of March 9th, and his letter of March 14th, had duly and properly accepted the offer to sell, in accordance with the terms of said offer. In the view I take of this case, I do not consider that point as material, and prefer now to examine the question as to whether there was in fact a valid option contract subsisting between the parties to hold the offer open for 60 days, because, if there was not, it is quite evident that the offer to sell was withdrawn before its acceptance by Mr. Couch, and the withdrawal was promptly communicated to him.

In England it has been held that there is neither principle nor authority for the proposition that there must be an express and actual withdrawal of the offer, but that the two minds must be at one at the same moment of time; that is, that there must be an offer continuing up to the moment of acceptance, and that if in fact the offer did not continue up to such moment the acceptance cannot make a binding contract. Dickenson v. Dodds, L. R. 2 Ch. Div. 463. In this country, on the contrary, it has been held that, to constitute a valid retraction, it must be communicated to the other party before he has accepted. Weaver v. Burr, 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94. A failure to distinguish and recognize the independent character of the contract to leave the offer open, and the attempt to treat the offer to sell and the time option contract as one transaction, has resulted in much confusion of thought. The relief usually sought is a specific enforcement of the offer to buy or sell, and, so far as the reported cases decreeing specific performance show, the offers have universally been accepted before their formal withdrawal, and therefore have become completed contracts which

could be enforced. The language of the courts must therefore be read in the light of that fact, and be regarded as surplusage in so far as it tends to hold that, if the offer was formally withdrawn before acceptance, the contract would still be specifically enforceable.

In an editorial note to the case of Litz v. Goosling (Ky.) 19 S. W. 527, 21 L. R. A. 127, it is suggested that even in the case where a completed time-option contract existed, and the offer therein contained was withdrawn before acceptance, there would ordinarily be no equitable ground for specific performance, although there would be a breach of the completed option contract. The author says:

"All attempts of the vendor to withdraw after being notified of acceptance are merely breaches of an existing contract which may be specifically enforced. But if before receiving such notice the vendor notifies the vendee of his withdrawal of the offer, it is difficult to see how there can be a specific performance of the contract, which has never been completed. Not withstanding the existence of a valid contract not to withdraw, if there is a withdrawal, the court, before enforcing the contract to sell, would have to either make a contract to enforce, or compel the vendor to make it. This might be done if there were distinct grounds for equitable jurisdiction, and no adequate remedy at law, by reason of the vendor's insolvency or some other cause. Otherwise it is hardly within equity jurisdiction. But the language of the opinions is broad enough to suggest the enforcement of a contract which has never been made."

I cannot go so far as the author of this note, because, in the case of a valid option contract, complete and sufficient in its terms to warrant specific enforcement if accepted before its withdrawal, and for which a valid consideration has been paid by the vendee, the very essence of the agreement is violated, and a time option becomes a farce, if we say that the vendee's only remedy for such a breach as a withdrawal by the vendor before the expiration of the time limited is a suit for damages for the breach. The contract in such a case is made, as to all its essential terms, in the unilateral option contract, which, it is true, is only binding upon the one party until accepted by the other, but which acceptance, if made within the time and according to the terms limited in the option contract, changes what was before a unilateral contract into a mutual one; and for this right of election, it is to be remembered, the party possessing it has paid what was deemed by the other a sufficient consideration for the right. It is evident that in large transactions, involving many tracts of land, failure to secure one upon which an option has been obtained may be, and often is, fatal to the whole enterprise, and damages for the breach of the option contract would be but a poor and feeble remedy, and one not at all adequate in the premises. Watts v. Kellar, 56 Fed. 1, 5 C. C. A. 394; Hall v. Center, 40 Cal. 65; and many others. But while I believe this to be the law as well established by well-considered decisions of many courts, it is nevertheless true that, before an option contract can be enforced by the person holding it, it must itself be complete and certain as to its terms, so that the court can see what contract the parties made. Brown v. Brown, 33 N. J. Eq. 650; Nichols v. Williams, 22 N. J. Eq. 63; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109, 32 L. Ed. 500; Dalzell v. Dueber Mfg. Co., 149 U. S.

315, 13 Sup. Ct. 886, 37 L. Ed. 749; Colson v. Thompson, 2 Wheat. 336, 4 L. Ed. 253; Diamond State Iron Co. v. Todd (Del.) 14 Atl 27; and numerous other cases to the same effect. And such option contract must not only be certain and complete, but must be ac· cepted in accordance with its terms. Any acceptance not in accord· ance with its terms is equivalent to a rejection. Weaver v. Burr, 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94; Wilkin Mfg. Co. v. Lum· ber Co. (Mich.) 53 N. W. 1045; Potts v. Whitehead, 23 N. J. Eq. 512.

In the case last cited the following language was used by the court:

"An acceptance, to be good, must, of course, be such as to conclude an agree· ment or contract between the parties; and, to do this, it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points, and closing with them just as they stand."

Tested in the light of these authorities, let us see whether in fact there was ever a valid option contract existing between these parties. Counsel, in the argument before me, have spent a good deal of time in discussing the question whether the telegram of March 9th, and the letter of March 14th, from Mr. Couch, contained a proper acceptance of the terms of the option offered by Mr. McCoy. In my view of the case, that question is entirely unnecessary to be considered. If I was forced to consider it, I should be inclined to hold that it was a sufficient notification to Mr. McCoy that Mr. Couch elected to take the land upon the terms proposed by Mr. McCoy; and, taking the view I do as to the enforceability of a valid option contract, accepted before the time limited for its expiration, I should be strongly inclined to hold that equity could take jurisdiction to enforce the contract. But the question here is not, as I view it, whether there was a sufficient acceptance by Mr. Couch of a valid option to purchase these lands, but whether there ever was in existence such a valid option contract.

Earlier in this opinion I called attention to the distinction between the option contract and the subsequent contract of sale. If there never was a valid, completed option contract between the parties, there never could be a valid agreement of sale founded upon it, for manifestly the only right Mr. Couch would have for time for election must grow out of such a valid contract for such time. Let us see what the offer of Mr. McCoy was, and whether it ever was accepted, so as to become a valid option contract for 60 days' time. Mr. McCoy's offer was couched in the following language: "For fifty dollars will give sixty day option at twenty-five thousand dollars." It will at once be observed that this was not an option, but an offer to give one in consideration of $50. Before any obligation rested upon Mr. McCoy to execute and tender the option contract thus referred to, the obligation rested upon Mr. Couch to accept the terms offered, and to pay or tender the consideration money. There can be no contention on the part of either party to this litigation that a formal contract was not contemplated. Mr. Couch, in his telegram of March 3d, says, "Forward sixty day option to-day First

National Bank, Ronceverte." And again, in his letter of the same date he says, "As I have but a few days in which to make my decision I decided to wire you to forward option at the price named and as soon as said paper arrives I will make investigation of your property and write you immediately on my return to Ronceverte." This language conclusively disposes of any possible contention that a formal option contract was not contemplated, for it will be observed that Mr. Couch, in his letter, proposes that "as soon as said paper arrives" he will make investigation of the property, etc. Under this state of affairs, and the information afforded by this letter, Mr. McCoy could be under no apprehension that Mr. Couch would place himself at any disadvantage by expending any money in the examination of this property or the purchase of contiguous property until he received the paper referred to in his letter. It will be observed that Mr. McCoy never offered to send this option agreement to Ronceverte or elsewhere, or to deliver it elsewhere than at the usual and ordinary place of delivery of such contracts, or until the consideration therefor had been paid. The vendor's domicile, residence, or place of business is, in law, the proper place for payment for and delivery of a contract or deed; and an acceptance by a proposed purchaser, payable or deliverable elsewhere, is not the unconditional acceptance required to make a binding contract. Such acceptance amounts to an alteration of the proposal, and is equivalent to a rejection; and, unless the alteration so made is thereafter expressly assented to by the proposer by word or act, it cannot convert the original offer into a completed contract.

In Sawyer v. Brossart, 67 Iowa, 678, 25 N. W. 876, 56 Am. Rep. 371, the offer was as follows: "Yours at hand. You can have that building for $3500 and the two for $5000. Let me hear from you at once." Plaintiff replied by telegraph: "Accept your offer for two buildings at $5000. Money at your order at First National Bank here. Telegraph me immediately when to expect deed." Sawyer lived in Iowa, and Brossart in California. Held, that the acceptance by Sawyer was not an acceptance of the offer as made, the court saying (page 680 of 67 Iowa, page 877 of 25 N. W. [56 Am. Rep. 371]), "When Brossart learned that he had offered the property at less than its value, or in any state of the case, it was his right to stand upon a strict acceptance of his offer;" emphasizing the point that it matters not what the motive may be influencing the defendant. To the same effect are Robinson v. Weller, 81 Ga. 704, 8 S. E. 447; Langellier v. Schaefer (Minn.) 31 N. W. 690; Greenawalt v. Este, 40 Kan. 418, 19 Pac. 803; Gilbert v. Baxter, 71 Iowa, 327, 32 N. W. 364; N. W. Iron Co. v. Meade, 21 Wis. 475, 94 Am. Dec. 557; Baker v. Holt, 56 Wis. 100, 14 N. W. 8; Batie v. Allison, 77 Iowa, 313, 42 N. W. 306.

This last case was one for specific performance, in which the offer was couched in the following language: "Will give warranty deed as title now stands as $8 per acre net to me." Plaintiff replied: "We accept your offer without qualification. * * * Notify us when and where to send money. * * *" The court below sustained a demurrer to the petition, and on appeal the court said:

"'The offer expressed nothing as to time or place of payment, and, had the acceptance been without expression on that subject, the law would fix the time and place; but the acceptance is upon condition that the defendant would 'notify us when and where to send the money.'" See, also, Maynard v. Taylor, 53 Me. 511; Esmay v. Gorton, 18 Ill. 483; Dejonge v. Hunt (Mich.) 61 N. W. 341; Eliason v. Henshaw, 4 Wheat. 225, 4 L. Ed. 556.

These authorities, collated from such varying sources, abundantly show the uniform doctrine of the courts as to the necessity for an unqualified acceptance of an offer in order to convert said offer into an agreement.

It is manifest that under ordinary circumstances the telegram and letter of Mr. Couch would impose no obligation whatever upon Mr. McCoy to execute and send to the First National Bank of Ronceverte the paper in question. The pleader who prepared the bill in the case recognized this fact, and attempted to bridge the difficulty by an allegation that before this time he had arranged with the officers of said bank that, should an option for these lands be there received, at a price which was at all reasonable, they should pay to Mr. McCoy $50 for the same out of funds deposited there by the plaintiff, and that he had written to Mr. McCoy, informing him of this arrangement. This might all be true, but it imposed no obligation upon Mr. McCoy to assent to any such arrangement, and there is no allegation in the bill that he did assent to it, or ever agreed to deliver any contract until paid for it. The pleader further states in the bill that Mr. Couch's letter of March 3d, asking that the option be forwarded, contains a statement "informing said McCoy that said sum ($50) was deposited at said bank, and would be forwarded by it on receipt of option." An examination of the letter itself, a copy of which is exhibited with the bill, discloses that the pleader was in error as to this, for no such statement is contained in the letter, nor is any reference whatever made to any arrangements for payment for the option. But even if such statement had been made in the letter, could it change the rights of the parties? Undoubtedly not. Mr. McCoy was entitled to payment for his option at the time and place of its delivery, which latter, in the absence of clear agreement to the contrary, would be at his residence, at Clinton, in the state of Iowa. If an acceptance of an offer to sell, qualified by making the consideration payable or deliverable elsewhere than at the residence or place of business of the vendor, is not a good acceptance, and may be treated as a rejection of the offer, how much more true is this of an offer of an option, which requires a consideration paid to support it, and which, all the authorities concede, may be withdrawn at any time, even though complete in form and signed by the vendor, unless a consideration has been paid for it, or the agreement be under seal, which imports a consideration. Hawralty v. Warren, 18 N. J. Eq. 124, 90 Am. Dec. 613; Borst v. Simpson, 90 Ala. 373, 7 South. 814; Sutherland v. Parkins, 75 Ill. 338; Conner v. Renneker, 25 S. C. 514. And even in the latter case, upon a suit for specific performance, the want of consideration may be shown notwithstanding the seal. 1 Pom. Eq.

§ 383; 3 Pom. Eq. § 1293; Graybill et al. v. Brugh (Va.) 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. Rep. 894.

The United States Supreme Court has frequently held that, exercising the discretion vested in courts of equity in cases for specific performance, it will not be decreed "if it be doubtful whether an agreement has been concluded or is a mere negotiation," or "unless the proof is clear and satisfactory both as to the existence of the agreement and as to its terms." Dalzell v. Dueber Watch Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749; Carr v. Duval, 14 Pet. 79, 10 L. Ed. 362; Nickerson v. Nickerson, 127 U. S. 668, 8 Sup. Ct. 1355, 32 L. Ed. 314; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. 109, 32 L. Ed. 500.

In Mississippi, etc., S. S. Co. v. Swift, 29 Atl. 1063, 41 Am. St. Rep. 545, 86 Me. 248, it was held that when parties enter into a general contract, and the understanding is that it is to be reduced to writing, or, if it be already in a written form, that it is to be signed before it is to be acted upon or to take effect, it is not binding until it is so written or signed, and that the burden of proof is on the party claiming the completion of the contract before the written draft is signed. In the case at bar it is perfectly clear that a formal option was contemplated by both parties, and in his letter of March 3d Mr. Couch says, "And as soon as said paper [the option] arrives I will make investigation of your property and write you immediately on my return to Ronceverte"; showing clearly that he was not relying on any existing option contract, but was looking to a formal option to be yet executed. It is also evident from Mr. McCoy's letter of March 3d that he had in mind the preparation of a formal option, and did not intend to be bound until such a paper was executed. In one of his letters of March 3d he says, "If the option on that basis is desired please inform me to that effect." To these letters explanatory of his telegram he never had any reply until after he had withdrawn his offer on March 8th.

In the case of Mississippi, etc., S. S. Co. v. Swift, supra, it was further held that:

"When correspondence indicates that a formal draft of a contract was in the minds of the parties, or at least in the mind of the party sought to be charged, as the only authoritative evidence of a contract, and that he did not have or signify any intention to be bound until the written draft had been made and signed, he is not bound until such draft is duly made and signed."

And in Wardell v. Williams, 62 Mich. 50, 28 N. W. 796, 4 Am. St. Rep. 814, it was held that:

"Either party has the right to withdraw from pending negotiations for the sale of real property, where no consideration has passed, no rights intervened, and the conditions of the parties have not changed."

From all of these considerations I conclude that, from the facts shown in the bill, it is not sufficiently shown that a valid option contract was entered into between the parties.

I conclude that the demurrer must be sustained, and the bill dismissed. A decree may be prepared in accordance with this opinion.