No. 15,316.

COLORADO WOMAN'S COLLEGE *v.* BRADFORD-ROBINSON PRINTING COMPANY.

(157 P. [2d] 612)

Decided March 19, 1945. Rehearing denied April 9, 1945.

238

Mr. E. V. HOLLAND, Mr. ARCHIBALD A. LEE, for plaintiff in error.

Mr. WILBUR F. DENIOUS, Mr. HUDSON MOORE, Mr. DAYTON DENIOUS, Mr. RICHARD TULL, for defendant in error.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

COLORADO Woman's College, to which we shall refer as the college, is an undenominational institution hav-

ing a two-year college course. In 1935 its plant was subject to a first mortgage totaling $101,000 on which foreclosure was threatened, and there were also outstanding bonds and interest in excess of $42,000 secured by second mortgage, and over $37,000 of notes and accounts. Action had been initiated against the college, it was facing other suits, and its continued existence appeared almost hopeless. Among the unsecured notes which would so have been wiped out was that of Bradford-Robinson Printing Company, to which we shall refer as the company. A large part of this indebtedness had been running ten or twelve years and was evidenced by notes drawing interest at six per cent per annum. With the assistance of a skilled church financial man, efforts were begun by the college to raise the necessary money to keep the institution open, starting with the proposal to the general creditors and second mortgage bondholders that since they would get nothing if the college failed, they should pledge one-half of their accounts and bonds as an incentive to other contributors. Such pledges were obtained except from defendant in error company, which executed the following instrument:

"Colorado Woman's College
Denver, Colorado

"$2500.00 June 19, 1935.

"In consideration of my interest in Colorado Woman's College, and for the purpose of paying all outstanding indebtedness, and to reduce the first mortgage loan, I hereby agree to pay to the said College the total sum of *twenty-five hundred* Dollars, to be credited upon the *$10,605.00* account due me from said College. This credit to be made in like proportion as payments are made by the College. *On condition sufficient amount is secured*

*to pay all outstanding old accounts and the second mort-
gage bonds.*

Name ........................

Address R. W. Bradford."

" (Italics not part of the printed form)."

This subscription was on a printed form with the amount written in, and the last sentence also was inserted at the insistence of R. W. Bradford, the company's president. Before signing the subscription there was a full discussion with Mr. Bradford concerning the financial condition of the college and an assurance by representatives of the latter that whatever they obtained that summer would be the beginning, and that they would continue until they succeeded with the financing.

The pledges received in 1935 permitted the continued operation of the college, but there was no full payment of accounts and second mortgage bonds. Solicitations were continued in 1936 and preparations made for a more intensive drive. In 1937 at the suggestion of money-raising experts the drive broadened in purpose to include both payment of debts and the building of a new dormitory which was badly needed and a large amount of money was raised. Solicitations continued, with contributions in decreasing amounts through 1938, 1939 and 1940, until finally in 1941 payment was made in full of the last of the second mortgage bonds and old accounts, and on November 27, 1941, the college tendered the Bradford-Robinson Company the full balance due on the note then held by it, less the amount of the $2,500 pledge. This was refused, payment of the full amount demanded and suit brought by the company upon the note. The court below gave the company judgment for the $2,500 in dispute, with interest thereon, together with $500 attorney fee.

 ██ In reviewing the case we are met at once by the familiar rule that the testimony must be considered, and every inference fairly deducible therefrom indulged, in support of the judgment below; and by another rule, equally well recognized, that subscription agreements, such as is here involved, are favored in law; that they are construed, if they reasonably may be, to support a recovery and that doubtful questions are to be resolved against subscribers who seek to evade promised contributions. *Eastern States A. & I. League v. Estate of Vail,* 97 Vt. 495, 124 Atl. 568, 38 A.L.R. 845.

Under our present rules of civil procedure defendant college having set up the subscription agreement in its answer, plaintiff company was not required to plead the defenses asserted thereto, so we can only look to its brief and the remarks of the court below to determine the issues tendered.

Prior to suit brought, there was a suggested defense on the ground that the subscription was signed by R. W. Bradford personally and not by the defendant company. However, after pre-trial conference, stipulation was filed in the case admitting the company's authorization of the signature.

No challenge was raised as to the consideration for the subscription agreement and it seems to have been well established by the evidence under any of the usual theories.

The defenses asserted in the company's brief to the validity of the subscription were four: 1. That it was conditioned upon the college securing sufficient funds to pay, and then paying, its debts and second mortgage bonds in full during the campaign of 1935, which was not done. 2. That the college secured ample funds in 1937 and that the company was released by its failure to make payment until 1941. 3. That the company was released by a subsequent agreement and novation amounting to accord and satisfaction. 4. That the college failed to satisfy the condition of the pledge by se-

curing the necessary funds and paying plaintiff within a reasonable time.

1. The first contention is not supported by plaintiff's testimony. R. W. Bradford, its president and only witness as to these matters, when asked what "inducement" was offered to make a contribution, replied: "They told me that they had a campaign on—that they were in the midst of it then—and if I would make a substantial contribution of the money they owed to me, that they would pay me up and clean up the account. On that representation I made out a pledge for $2500." Later he testified further: "Q. Did you or did you not finally agree to make a deduction upon certain conditions? A. That's right. Q. Were those conditions inserted into your subscription? A. Yes, I had that right on there, or wrote on there, 'On condition sufficient amount is secured to pay all outstanding old accounts and the second mortgage bonds'."

The suggested inducement specified no time for payment and Bradford's testimony explicitly eliminates any condition except that inserted in the written subscription. Both other men present when the subscription was made specifically denied that there was any oral condition so limiting it or any time limit mentioned.

But this defense must fail in any event as it constitutes an attempt to alter or add to a written instrument by oral testimony not only changing its time of performance, but establishing a parol condition of performance within a certain time. Where no time of performance is specified in a contract, the legal effect is that it is to be performed within a reasonable time, and parol evidence is not admissible to vary the construction to be legally implied from the instrument itself. 22 C.J. 1076, §1382; *Smith Co. v. Corbin,* 81 Wash. 494, 142 Pac. 1163.

2. It is true, the college secured sufficient funds in 1937 to make payment of these debts, provided it might properly so have applied them. But such funds were

raised for the specified double purpose of paying the debts and building the dormitory as recommended by experts who assisted in raising funds for colleges. The college was under a moral obligation, at least, to keep faith. It used only the necessary money in excess of what could be raised by a bond issue toward building the dormitory, as it had promised, and applied the balance to payment of its debts. There is no evidence that this was not equitably done. The creditors gained, rather than lost, through increased subscriptions from inclusion of the additional purpose, and carrying out that purpose was not a diversion of funds, but common honesty.

■ 3. Until the condition of the subscription had been met, it was not enforceable in any respect. It furnished no legal excuse for the college not renewing its notes to the company or for not making payments on them. The company properly asked for and obtained renewal notes in September 1935, before there could have been any claim of avoiding the pledge. Until the pledge became effective by compliance with its condition, the college could not insist on credit in proportion as payments were made on its note or at all. No deduction can be made from the fact that the college paid other notes long before that of the company, for the reason that the pledges allowing credit on these notes had no such condition attached as the one here involved and could be taken advantage of at any time, while no credit could be obtained on plaintiff's note until the whole indebtedness had been secured. Naturally and properly payments were first made where double and immediate credit was given. The facts do not evidence novation or any subsequent agreement.

4. The one condition precedent to enforcement of the company's pledge was that inserted at the insistence of Mr. Bradford, "On condition sufficient amount is secured to pay all outstanding old accounts and the second mortgage bonds." Before this subscription could be

enforced, the college was under obligation to secure sufficient funds to make full payment of these obligations, in excess of $79,600, within a reasonable time. Parol evidence was admissible, not to alter the written pledge, but to throw light on the question of what was a reasonable time. 32 C.J.S. 789, §853.

We have said that reasonable time may be such time as is necessary *conveniently* to do what the contract requires should be done. *McWilliams v. Garstin,* 70 Colo. 59, 197 Pac. 246. The test of compliance with such a condition precedent is by the situation shown at the time it is sought to be enforced, not necessarily by that anticipated at the time of its execution. *Continental Co. v. Eilers,* 134 Nebr. 278, 278 N.W. 497. The measure of reasonable time is not by a period of limitation, but by the diligence and capability of endeavor and the reasonable adaptation of methods to the end to be accomplished.

When the facts are clearly established or are undisputed, the question of what is a reasonable time is one of law. *Patterson v. Hitchcock,* 3 Colo. 533; *Denver & Rio Grande R.R. Co. v. Doyle,* 58 Colo. 327, 145 Pac. 688; *Henderson v. Daniels,* 62 Mont. 363, 205 Pac. 964; *Morse v. Bellows,* 7 N. H. 549. We think such is the case here. The facts are clearly established and without material dispute. The company's bill was ten or twelve years old. During all that time the college had been unable to make progress in payment of its old accounts. The depression which had been a large factor in the institution's financial condition still hung heavy over the community. The college, as a nondenominational institution, had no particular class to whose loyalty and devotion appeal might be made. The limited group of persons who might be subject to appeal for such financial assistance to a girls' junior college, might well hesitate to give because of the first mortgage in excess of $100,000.00, the foreclosure of which was threatened and might make their contributions in vain. While in-

directly the appeal for funds was for the benefit of the college, its immediate purpose was the payment of existing creditors. Initial subscriptions by the creditors were a necessary inducement for others to subscribe and such other subscriptions were directly beneficial to the creditors. Many considerations made the task appear long, difficult and uncertain. Further, similar subscriptions—except of fifty per cent instead of twenty-five per cent of the amounts due—were made at the same time by all the other creditors and second mortgage bondholders, and these bondholders were not paid until 1940 and 1941, yet their pledges were all recognized and accepted. When the matter of the subscription was brought to the attention of Mr. Bradford, he did not have in mind that it was conditional, but had forgotten it and wanted to take it up with his attorneys. Bradford's insistent testimony elsewhere that the object of the donation was "to get the account cleaned up" was refuted by the very condition he required inserted which logically delayed settlement with him until all others were provided for. The company itself caused the delay and was not prejudiced thereby; on the contrary, it received interest on its money and some $23,000 additional from the college for further printing done for it in the meantime. The evidence is convincing that the college diligently and continuously kept up its solicitations during the entire period in its endeavor to meet the condition of the subscription and clear up its debts, and there is no evidence of suspension or inefficiency or indifference or unnecessary delay, or of taking longer than was necessary conveniently to perform the condition. We believe the condition was met within a reasonable time.

There is, however, another consideration which is determinative of the issue here. The one purpose of the condition imposed by the company was that of additional incentive and reward for diligence and continued effort until all the college debts should be

satisfied. The company which dictated the condition left it without time limit. The circumstances necessarily support the inference that the college accepted and incurred expense and devoted effort and that other subscribers in good faith made contributions, all in reliance on it. Time was not essential. The company could not in good conscience be permitted knowingly to let the efforts and expenses continue and other contributions be made, all on the strength of its pledge, by silence inducing the belief it was still recognized and in force, when in fact the company had secretly determined to refuse payment. That Bradford had forgotten the subscription does not help him. In such situation the company was required to notify the college, giving a definite and reasonable time for complying with the condition. This is sometimes referred to as making time of the essence. "Until a party is put in default, he may perform a condition for which the contract fixes no time." 17 C.J.S. 937, §456. "It is settled law that unless time is of the essence of a contract, mere lapse of time does not avoid it or forfeit rights under it. And it is equally well settled that time is not of the essence of a contract which provides for a reasonable time. *Taylor v. Goelet,* 208 N. Y. 253, 101 N.E. 867, Ann. Cas. 1914D, 284. In such a case where time is not of the essence, one wishing to rescind for delay must give notice of his intention so to do and allow a reasonable time." *Boswell v. United States,* 123 F. (2d) 213.

This rule requiring notice of intention has been held not to be necessary where the contract has been abandoned or treated as terminated and its basis is found in the reluctance of the courts to enforce penalties and forfeitures in matters of contract. *Taylor v. Goelet, supra.* Here it has a further basis in estoppel. The company gave no such notice and we must conclude that its subscription was still valid when tendered with cash payment of the balance due on the college note.

In view of our decision the question of attorney fees

is eliminated. However, as a suggestion in pleading, allegation in complaint on a note that plaintiff has incurred an attorney's fee of $1,000 for the bringing of suit, followed by the attorney's testimony that there was no agreement as to the amount of fees and that about $500 would be reasonable, hardly does lip service to Rule Eleven of our Rules of Civil Procedure and that rule may deserve more respect.

The judgment below is reversed and the cause remanded with instructions to dismiss at plaintiff's costs.

MR. CHIEF JUSTICE BAKKE and MR. JUSTICE ALTER concur.