No. 20,301.

HERBERT L. SHULL, ET AL., *v*. EARL SEXTON, ET AL.
(390 P. [2d] 313)

Decided March 16, 1964.

Messrs. CRISJOHN and DYER, for plaintiffs in error.

Messrs. DILTS and HANCOCK, for defendants in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

A DECREE for specific performance of a contract, resulting from an election to exercise an option, entered by the trial court in favor of the Sextons, the optionee-purchasers, and against the Shulls, the optionor-vendors, is the subject of review by writ of error issued by this Court on the application of the latter.

On August 5, 1957, the Shulls agreed in writing to convey certain realty to the Sextons upon payment of a $1500.00 balance on or before January 15, 1958, and in the agreement the following also appears:

"Sellers grant unto the buyers a further option to purchase an additional tract of land lying immediately contiguous to the North boundary of the land now being purchased under the above agreement and this option shall be valid for a period of two years from and after the date hereof. For the said option, buyers have paid and sellers acknowledge receipt of $10.00 and other good and valuable considerations.

"The purchase price for the additional land as herein described shall be in the entire amount of $750.00 to be paid in manner and form hereafter to be agreed upon in the event the option is exercised."

Sometime thereafter and before April 1, 1958, there was executed an "Amendment to Purchase and Sales Agreement with Option to Purchase." Its avowed purpose was clarification of the option granted to the Sextons, and to this end it provided:

"The additional land from which the option is granted now described as being a tract of land lying along and

adjoining the North boundary of the land heretofore purchased and being described as 50 feet wide by 300 feet long.

"The 50 feet by 300 feet property will join the front and rear lines of the property heretofore purchased."

It is admitted that the Shulls received a letter from Sextons' attorneys, dated May 4, 1959, which, omitting formal parts, reads as follows:

"You are hereby notified that Earl Sexton and Junior Lawrence Sexton are ready, willing and able to exercise that certain option contained in the Purchase and Sales Agreement with Option to Purchase of August 5, 1957, and as amended, and are now ready, willing and able to pay the sum of $750.00 for the additional 50' x 300' strip of land adjoining the present front and rear lines of the property heretofore purchased.

"The Sexton Brothers agree to cause the strip of land to be surveyed at their own cost and expense.

"At the time the survey is completed and a proper description obtained, it will be necessary for you and Mrs. Shull to execute a Warranty Deed conveying the property."

At the conclusion of Sextons' case the Shulls moved for dismissal, and advised the trial court that they would not present evidence, either in support of their defenses or their counterclaim. They then withdrew their counterclaim, and requested time in which to submit a brief in support of their motion to dismiss.

Briefs were filed, after which the trial court entered its decree directing the Shulls to specifically perform the agreement. The Sextons had filed a count in which they sought to recover for the drilling of a well on property of the Shulls. Judgment thereon in the sum of $170.00 was entered by the court and ordered credited on the $750.00 required to be paid for the realty, subject of the option.

Testimony to the effect that the Sextons had drilled a well for the Shulls, and that the parties had agreed

that the charge therefor of $170.00 be credited to the Sextons on the option, was not challenged. The record discloses that the suit was filed on August 5, 1959, the day after the expiration of the two-year period allowed for exercising the option. Pursuant to leave granted by the trial court, the Sextons did on August 11, 1959, deposit $750.00 in the registry of the court for disposition in accordance with whatever directions it may ultimately make.

In their Summary of Argument the Shulls contend (first) that the agreement as amended is "too vague, indefinite, incomplete and uncertain for specific performance to be granted in the following particulars:

A. The performance was insufficient.

B. The payment was left for future negotiation.

C. Description of the land was insufficient."

Their second contention concerns the letter written by Sextons' attorneys; they say that it was neither a tender nor an exercise of the option, and was "insufficient as a matter of law."

Their third and fourth grounds for reversal are:

"3. The option is a unilateral contract and was not performed by the [Sextons] within the term of the contract and being a unilateral contract, specific performance can only be granted when all conditions are performed.

"4. The agreement is to be construed against [Sextons] due to the fact it was the [Sextons] agreement."

Inadequacy of the provisions for performance is said to exist because of lack of specificity in respect to the manner, time and place of performance, and from a lack of legal description. And an engagement to pay $750.00 "in manner and form hereafter to be agreed upon in the event the option is exercised" is, it is argued, committing the terms for payment to future negotiation.

Continuing their argument, the Shulls reason that a contract so destitute of material detail cannot be the basis of a decree of specific performance without the

court supplying the details which are missing, and this the court cannot do, for in so doing, the court would be making the contract for the parties.

■ Certain familiar rules should be mentioned as the backdrop for our disposition of this case. A contract must contain the essentials — parties, terms, subject-matter and consideration — , *Ross v. Purse*, 17 Colo. 24, 28 Pac. 473, and be reasonably certain in order to justify a decree of specific performance, *Crumley v. Shelton*, 71 Colo. 466, 208 Pac. 460; *Hill v. Chambers*, 136 Colo. 129, 314 P. (2d) 707. Courts cannot make contracts for parties and then order them specifically performed. *Mestas v. Martini*, 113 Colo. 108, 155 P. (2d) 161; *Stout v. Porritt*, 250 Mich. 13, 229 N.W. 409.

■ An option founded upon a consideration is a unilateral contract which is obligatory on the optionor and non-obligatory on the optionee until the latter makes an election to accept the offer contained in the option. "Upon the exercise of plaintiffs' option to purchase * * * , the agreement ceased to be an option and ripened into a mutually binding and mutually enforceable contract." *Stanton v. Union Oil Co.*, 111 Colo. 414, 142 P. (2d) 285; *Rude v. Levy*, 43 Colo. 482, 96 Pac. 560, 127 Am. S.R. 123, 24 L.R.A.N.S. 91.

■ Although a contract may be uncertain or incomplete in some respects, its specific performance may nevertheless be decreed where the uncertainty or incompleteness relates to matters which the law makes certain or complete by presumption, rule, or custom and usage. *Ross v. Purse*, supra; *Cochrane v. Justice Mining Co.*, 16 Colo. 415, 26 Pac. 780; *Bechmann v. Taylor*, 80 Colo. 68, 249 Pac. 262; Pomeroy, Specific Performance of Contracts, 394, 396, §§ 154, 155.

"The general doctrine, however, has been formulated by eminent judges, that an agreement framed in general terms will be enforced where the law will supply the details . . ." Pomeroy, Specific Performance of Contracts, 394, § 154. Specific performance has been

decreed in suits involving contracts in which resort has been made to terms which the law implies. *Bechmann v. Taylor,* supra; *Miller v. Gordon,* 296 Ill. 346, 129 N.E. 809; *McAdam v. Leak,* 110 Kan. 704, 208 Pac. 569; *Lawson v. Mullinix,* 104 Md. 156, 64 Atl. 938; *Bennett v. Moon,* 110 Neb. 692, 194 N.W. 802, 31 A.L.R. 495; *Moran v. Fifteenth Ward Bldg. & Loan Ass'n,* 131 N.J. Eq. 361, 25 A. (2d) 426.

■ Is the contract resulting from the exercise of the option by the Sextons deficient in respect to the manner of performance? In our opinion, it is not; it requires the payment of money on the part of the Sextons and a conveyance on the part of the Shulls. Properly construed, the contract contains dependent covenants, i.e., the delivery of the deed and the payment of the purchase price, which are to be performed concurrently. *Byers v. Denver Circle Railroad Co.,* 13 Colo. 552, 22 Pac. 951; *Northern Ill. Coal Corp. v. Cryder,* 361 Ill. 274, 197 N.E. 750, 101 A.L.R. 1420; *Kottler v. Martin,* 241 N.C. 369, 85 S.E. (2d) 314.

But the Shulls point out that the contract thus created lacks any provision for the time of performance. Courts have applied the doctrine of performance within a reasonable time where the contract fails to specify the time for the discharge of obligations. *Penney v. Norton,* 202 Ala. 690, 81 So. 666; *Ullsperger v. Meyer,* 217 Ill. 262, 75 N.E. 482, 2 L.R.A.N.S. 221; *Lawson v. Mullinix,* supra; *Trotter v. Lewis,* 185 Md. 528, 45 A. (2d) 329; *Swedish-American Nat. Bank v. Merz,* 179 N.Y.S. 600. See *Home Ins. Co. v. Stewart,* 105 Colo. 516, 100 P. (2d) 159. "No exact date for the conveyance and payment being fixed, the law provides that the same shall be made within a reasonable time. Terms which the law implies by legal presumption need not be expressly stated." *Swedish-American Nat. Bank v. Merz,* supra.

Reasonable time is measured by the circumstances of the case. Ullsperger v. Meyer, supra; Colorado Woman's College v. Bradford-Robinson Prtg. Co., 114 Colo. 237,

157 P. (2d) 612. "Under such contract the law would imply that it was to be performed within a reasonable time after entering into the same, and what would be a reasonable time would be a matter of proof under all the conditions and circumstances that might surround the case." *Ullsperger v. Meyer,* supra. "We have said that reasonable time may be such time as is necessary conveniently to do what the contract requires should be done." *Colorado Woman's College v. Bradford-Robinson Prtg. Co.,* supra.

It follows that the contract arising from the notice of acceptance of the option was to be performed within a reasonable time after such notice. *Northern Ill. Coal Corp. v. Cryder,* supra. Certainly, the ascertainment of a legal description of the property, the examination of an abstract of title, the preparation of a conveyance and the payment of the purchase price were circumstances to be considered in measuring the reasonable time for performance in this case. *Northern Ill. Coal Corp. v. Cryder,* supra; *Martindell v. Fiduciary Counsel, Inc.,* 133 N.J. Eq. 408, 30 A. (2d) 281; see *Abramson v. Wilson,* 131 Colo. 580, 284 P. (2d) 662.

Is there merit to the argument that the contract is deficient because place of performance is not mentioned? Again, the law supplies that which is said to be lacking. "Unless otherwise agreed, defendant [vendor] was entitled to have the transaction closed where she lived." *Rahm v. Cummings,* 131 Minn. 141, 155 N.W. 201; *Couch v. McCoy,* 138 Fed. 696; *Knox v. McMurray,* 159 Iowa 171, 41 N.W. 652; *Anderson v. Stewart,* 149 Neb. 660, 32 N.W. (2d) 140. See *Gill v. Justice of the Peace,* 111 Colo. 160, 139 P. (2d) 271. In the absence of a stipulation of the place of performance, the law implies the place to be where the Shulls live, and there the Sextons should pay the purchase price to the Shulls and the latter should deliver a deed of the property to the Sextons.

We next consider the assertion that the contract

lacks a sufficient legal description of the property to be conveyed. "Reasonable certainty in the ascertainment of the lands agreed to be conveyed is all that is required." *Matlack v. Arend,* 2 N.J. Super. 319, 63 A. (2d) 812. "If the writing contains indicia by reference to which, coupled with the defective designation otherwise, the identity of the premises can reasonably be determined, specific performance may be decreed." *Ross v. Purse,* supra.

Specific performance was decreed in a suit involving a lease with an option to purchase in which the property was described as "my homestead & additional land joining same of four hundred & forty (440) acres." The Court said: "Everyone connected with the deal knew what land was involved, and at the trial the court permitted the description to be read into the record from the county clerk's records. . . ." *Boyd v. McElroy,* 105 Colo. 527, 100 P. (2d) 624.

In the present case the trial court directed that a survey be made of the property in question, and that the description derived therefrom be inserted in the deed which the Shulls were by the decree ordered to execute and deliver to the Sextons. Under any of the foregoing rulings, we hold that real estate delineated as "[t]he 50 feet by 300 feet property [joining] the front and rear lines of the property heretofore purchased," where the latter property is described, sufficiently identifies the property which formed the subject of the option.

The Shulls question the sufficiency of the contract on the theory that "payment was left for future negotiation." The language occasioning their action is:

"The purchase price for the additional land as described shall be in the entire amount of $750.00 to be paid in manner and amount hereafter to be agreed upon in the event the option is exercised."

In *Swedish-American Nat. Bank v. Merz,* supra, quite similar language was construed. An option to purchase

real estate for $40,000 "to be paid in manner and form as shall be agreeable to the contracting parties in the event of the exercise of the option," was ordered specifically performed when the evidence showed an election to accept the option and an offer to pay the full sum. The Court reasoned that since the contract showed that there had been no agreement as to such terms, their omission from the writing was immaterial and the law would supply them by requiring payment "in cash at the time of the conveyance." The Court questioned whether manner and form of payment were essential parts of the contract, concluding:

"All that is needed to make a valid contract for the payment of money is the promise to pay the consideration named. Such promise was made by the vendee, and it is entirely immaterial whether the parties agree as to the manner and form of payment. The real test as to whether the contract is complete is: Can it be specifically performed? Can it be specifically enforced? The vendor can be told to convey and the vendee can be told to pay simultaneously, all within the language and clear legal meaning of the contract, option, and acceptance."

In *Matlack v. Arend,* supra, property was leased, and the lessee given an option to purchase. The purchase price was $14,300, and a deposit of $1100 was made primarily as security for the payment of rent but was to be "used and considered as an initial and down payment on the purchase price." The language relating to the payment of the balance was, "providing satisfactory terms for the payment of the purchase price can be arranged." The lessee offered to pay the balance in cash.

In a well-reasoned opinion the Court held that:

"In the circumstances of the present controversy, I am constrained to resolve that where, as here, the language of the agreement relative to the terms of payment of a specified purchase price does not disclose an intention that credit in some form secured by some income-

producing obligation is to be given, and where, as here, the vendee in his complaint expressly waives all credit and offers to pay cash, the defense that the agreement in the particular mentioned is incomplete and too indefinite to be enforced is untenable. * * *

" * * * Where as here a particular manner and method of payment have not been agreed upon, and all the other essential and material elements of the agreement are present, the proffer of the balance of the purchase price, in cash, made obligatory upon the plaintiff by the allegations of the complaint, leaves nothing of real substance lacking in the compact."

In accord with the last cited case are *Levine v. Lafayette Bldg. Corp.,* 103 N.J. Eq. 121, 142 Atl. 441; *N.E.D. Holding Co. v. McKinley,* 246 N.Y. 40, 157 N.E. 923. In the present case the evidence showed that the Shulls had credited, in accordance with their arrangement with the Sextons, the sum of $170.00 (the charge for the well) on the $750.00 purchase price. Moreover, the Sextons deposited in the court $750.00, to abide the order of the court. Under these circumstances, we echo the statement in the Matlack case that the deposit in court left "nothing of real substance lacking in the compact."

The offer to pay the full amount obviated any need to come to any agreement as to the manner and form of payment, and thus this subsidiary part of the agreement, not being of the essence of it, in no way affected the right to specific performance. *Swedish-American Nat. Bank v. Merz,* supra.

What we now say will dispose of the remaining contentions regarding lack of a tender and of an exercise of the option, the unilateral character of the option and that it never shed such character, and the necessity to construe the contract in a manner adverse to the Sextons.

The provision that $750.00 "be paid in manner and form hereafter to be agreed upon in the event the option is exercised" places the exercise of the option as

an event preceding payment or tender of payment. *Abrahamson v. Wilson,* supra.

Payment or tender of the purchase price at the time of election by the Sextons is not requisite under the language of the option; and by virtue of that which is put in the contract by implication under the law, payment is required only at the time the Shulls make or tender conveyance. *Northern Ill. Coal Corp. v. Cryder,* supra; *Kottler v. Martin,* supra. See *Abrahamson v. Wilson,* supra.

We have held that "payment or tender is not essential to acceptance unless the option makes it a condition precedent to, or a part of, or necessary to, the acceptance or the exercise of the option. . . ." *Miller v. Carmody,* 152 Colo. 353, 384 P. (2d) 77. This language is applicable to the contract under consideration, for payment or tender was not made essential to the election granted in this case.

The letter from the attorneys of the Sextons, advising the Shulls that they were "now ready, willing and able to pay the sum of $750.00" for the property, that they were having the property surveyed, and that when a proper description was obtained they would expect the Shulls to execute a deed, is an acceptance and created a mutually binding and mutually enforceable contract. Shull's argument that the letter did not constitute an election is highly technical; common sense and understanding forbid such a tenuous and inordinately legalistic interpretation.

The judgment is affirmed.

Mr. Justice Moore and Mr. Justice Pringle not participating.