## No. 11,858.

Seifert *v.* Gildersleeve, et al.

Decided May 14, 1928. Rehearing denied June 25, 1928.

Mr. Edwin H. Park, Mr. Lewis C. Rush, for plaintiff in error.

Messrs. Crump & Riley, Mr. Benjamin Griffith, for defendants in error.

*Department One.*

Mr. Justice Walker delivered the opinion of the court.

Plaintiff in error, Seifert, was the inventor of certain rotary bits, mudder and whirler, for use in drilling oil wells. Applications for patent were pending. March 28, 1923, plaintiff in error entered into a written contract with defendant in error Gildersleeve, a promoter, for the organization and promotion of a corporation to develop and market the bits. This contract contained numerous provisions which need not be set forth here. On May 21, 1923, Seifert and Gildersleeve entered into another contract in writing, covering the same subject matter as the first, and intended by the parties to be a substitute therefor. By the terms of the second agreement, which also included the mudder and whirler, Seifert was to assign the inventions, improvements, and patents to himself in trust for the purpose of carrying out the contract. He agreed "to grant, sell, assign, transfer and convey, or cause to be granted, sold, assigned, transferred and conveyed, to said corporation, the sole and exclusive right in perpetuity, to use, manufacture, sell, lease, rent, market, distribute, handle and dispose of said inventions * * * in any and every way, together with all improvements thereof and thereon, or cause the same to be done."

He was to receive 10 per cent of the stock on the completion of the financing, and a royalty of 20 per cent of

the income of the corporation derived from the use, etc., of the inventions, not however, to exceed one-third of the profits of the corporation derived from that source. Seifert was also to be employed by the corporation for six months at a salary of $300 per month. Under the terms of this agreement Gildersleeve in consideration of 65 per cent of the stock, was to raise $75,000 within a year after a successful test of the invention. The entire stock of the corporation was to be issued in the first instance to Seifert, in return for the assignment of his inventions; and 75 per cent of the stock then to be distributed to Seifert and Gildersleeve as above stated. · It was further provided, "that the things and matters herein contained relating to said corporation to be formed, shall be wholly in charge of its board of directors, and that the decisions reached by said board of directors as to what is necessary to be done in the carrying out of the terms and provisions of this agreement, shall govern and bind said corporation in the faithful performance of the obligations on its part to be performed."

Changes were made in many of the material provisions of the first contract, most, if not all, of such changes being less favorable to Seifert as the inventor, than the terms of the first contract.

After the execution of the contract of May 21st, the corporation therein referred to was formed under the name of the Universal Rotary Bit Company, defendant in error. On May 25th, Seifert made an assignment of the inventions to himself as trustee; and on May 28th, as trustee, made an assignment to the Universal Rotary Bit Company. In this assignment he recited the agreement of May 21st, and annexed a copy thereof. The assignment recites that, "the said parties now desire to perform, carry out and fulfill the intent, purpose and terms of said contract of May 21, 1923."

Following is its granting clause: "The said party of the first part as trustee has and by these presents does hereby grant, sell, assign, transfer and convey, unto said

34

party of the second part, and its successors and assigns, the sole and exclusive right in perpetuity to use, manufacture, sell, lease, rent, market, distribute, handle and dispose of in any and every way, the following described devices, inventions and discoveries (describing the bit, mudder and whirler); to have and to hold the same unto the said party of the second part, its successors and assigns forever." The assignment also contains provision for the payment of 20 per cent royalty in the language of the contract of May 21st.

On May 29th, the board of directors of the Universal Rotary Bit Company accepted said assignment, and issued all of its stock, less certain qualifying shares, to Seifert. By the motion so accepting said assignment, it was provided that the stock should be transferred by Seifert to the treasury of the company, "and thereafter to be issued and distributed in accordance with the terms of said contract of May 21, 1923, to the amount of 750,000 shares, and the balance to be issued and distributed as ordered and directed by the board of directors."

On January 24, 1924, Seifert executed to the company, its successors and assigns, a second assignment as trustee, transferring the discoveries and inventions, to be held pursuant to the terms of the assignment of May 28th. This latter assignment was recorded in the patent office, August 10, 1925. Seifert was employed and paid by the corporation as provided in the contract.

Under date of February 19, 1925, contracts were entered into between the Stearns-Roger Manufacturing Company, defendant in error, and Gildersleeve; and between the Stearns-Roger Manufacturing Company and the Universal Rotary Bit Company. These contracts in substance gave to the Stearns-Roger Manufacturing Company an option, upon the making, at its expense, of a successful test of the rotary drill bit, one of the inventions, to enter into a further contract with the Universal Rotary Bit Company, under the terms of which further contract the Universal Rotary Bit Company was to grant

to the Stearns-Roger Manufacturing Company, "the sole and exclusive right to manufacture and distribute said bits and parts and all improvements thereon, throughout the United States."

By this further agreement it was to be provided that the Universal Rotary Bit Company must first agree to all plans, including the charges for said bits and parts, upon which the Stearns-Roger Manufacturing Company should distribute the bit; and that the Universal Rotary Bit Company should have one-half of the net profits arising from such manufacture and distribution; with the option upon the part of the Universal Rotary Bit Company to terminate the contract after the expiration of five years, upon the payment of prescribed sums. The Stearns-Roger Manufacturing Company would agree, by such further contract, to develop the sale of the bits as rapidly as possible, and manufacture and distribute them at its own expense. Pursuant to the agreement of February 19th, the Stearns-Roger Manufacturing Company expended several thousand dollars in the making of tests of the invention. In the meantime, Gildersleeve had sold several thousand dollars of the stock in the Universal Rotary Bit Company. But no part of the 10 per cent agreed to be issued to Seifert had been issued to him.

August 8, 1925, Seifert instituted this action, naming Gildersleeve and the Universal Rotary Bit Company as defendants. The substance of his complaint, as finally amended, was that it was understood between Gildersleeve and himself that the contract of May 21st was to be merely a redrafting of the contract of March 28th, with the addition of provisions regarding the mudder and whirler and for the disposition of the remaining 25 per cent of the capital stock of the company; that Gildersleeve represented to Seifert that said contract of May 21st when drafted did in fact only contain the terms of the previous contract, with the additions noted; that Seifert did not read the contract of May 21st, and relied upon the assurances of Gildersleeve and the attorneys

who drafted it, that it was a mere redrafting of the former contract; that Seifert did not know of the numerous changes made in the terms of the agreement, and never consented thereto, and did not discover that he had been deceived until shortly prior to the beginning of the suit. He charged that Gildersleeve together with the attorneys who drafted the contract, conspired by this fraudulent means to defraud him out of his property in the inventions. He further alleged that the changes in the contract were without consideration, and that he has at all times refused to recognize the pretended agreement of May 21st, and has insisted on its cancellation. He attached to his complaint as exhibits, copies of both contracts. He also alleged the making of the contracts with the Stearns-Roger Manufacturing Company, as above set forth, and averred that they were void. By the prayer of his complaint he asked that the contract of May 21st be reformed to comply with the terms of the contract of March 28th, and that as so reformed the plaintiff be permitted to enforce it; and he also asked that the contract with the Stearns-Roger Manufacturing Company be canceled.

To this complaint Gildersleeve and the Universal Rotary Bit Company filed an answer in which they denied the charges of fraud and misrepresentation as to the contents of the contract of May 21st, and also set forth affirmatively the assignments, issuance of stock, etc., made, as they allege, in pursuance of that contract, and as hereinabove set forth; and they affirmatively prayed that their rights and title, based on the contract of May 21st and assignments thereafter made, be quieted, and the plaintiff enjoined from asserting any adverse rights thereto. Plaintiff's replication charged fraud in the procuring of the assignments, by misrepresenting their contents.

The Stearns-Roger Manufacturing Company filed its petition in intervention, setting up the contracts of February 19th, averring that they had expended money upon

the strength thereof, and asking that their rights under the contracts be confirmed, and the plaintiff enjoined from attempting to patent or place upon the market any similar bit, and from interfering in any way with the development or perfection and marketing of the bit by the inventor. To this petition in intervention the plaintiff replied, averring among other things that the intervener well knew "that the pretended contract of May 21, 1923, was absolutely void, and of no effect, and that it was procured by fraudulent means."

When the case came on for trial, the trial judge ruled that there were only two questions presented: (1) What was the real contract between the parties, that of March 28th or that of May 21st; and (2) whether the contract of the Universal Rotary Bit Company with the Stearns-Roger Manufacturing Company was a valid contract as against the plaintiff. After a protracted hearing, all issues were found in favor of the defendants and the interveners, and special findings were made in their favor. It was specifically found that the plaintiff was fully advised of all contents and terms of the agreement of May 21st, before he entered into the same, and that he was also fully advised of all the terms and conditions of the several assignments which he had made, and that his charges of fraud were not sustained by the evidence. By the decree the plaintiff was denied any relief, and the rights of the interveners and the defendants under the several contracts and assignments were quieted and confirmed, and the plaintiff enjoined from interfering therewith. To this decree the plaintiff has prosecuted this writ of error.

Mr. Justice WALKER, after stating the case as above.

The plaintiff did not, in his complaint, allege the execution of the instrument of May 21st as the contract between the parties, but, on the contrary, pleaded that his signature thereto was procured by fraud, by reason of which he repudiated it. Nor did he, by any appropriate

allegations in his reply to the answer and in his answer to the petition in intervention, set up any breaches by the defendants, of the contract of May 21st. Consequently, the trial court was right in declining to pass upon any issue relative to the breach of that contract by defendants, and no such issue is determined by the decree herein. This makes it unnecessary to specifically consider some of the contentions made by the plaintiff in error, and others must also be deemed to be settled against him by the findings of the trial court upon the issue of fraud in the drafting and execution of the contract. These findings are supported by competent evidence, and, contrary to the insistence of plaintiff in error, we find no admission either in the testimony of Gildersleeve or in his brief herein, which compels the reformation of any part of the contract of May 21st.

There remain, then, for special consideration, two only of the contentions made by plaintiff in error. It is upon these that he chiefly relies. They are: (1) That the contract of May 21st is not supported by a consideration; and (2) that the defendant corporation had no right, under the contract of May 21st and the assignments to it, to enter into the contracts with the intervener and to give to the intervener the license to make and distribute the bit.

1. The argument of the plaintiff upon the question of consideration is that the promises made to the plaintiff in the second contract were the same or at least no more beneficial to him nor onerous to the defendants, than those to the performance of which he was already lawfully entitled under the first contract, and that therefore there was no new consideration present in the second contract sufficient to support plaintiff's new and more burdensome obligations. This argument, whether otherwise sound or not, overlooks a controlling fact. The defendant corporation was not organized until after the execution of the contract of May 21st. It consequently was never bound by the contract of March 28th. *Miser G. M.*

*& M. Co. v. Moody*, 37 Colo. 310, 86 Pac. 335. When organized, the corporation adopted and entered into as its first and only contract with the plaintiff, the agreement of May 21st. It became a party to that contract. Its promises therein and the partial performance thereof as hereinabove set forth, constituted full and sufficient consideration for plaintiff's promises as contained in that instrument.

2. The assignments required by the contract of May 21st and afterwards made by the plaintiff to the defendant corporation, were of such a full and complete character as to vest in the corporation the entire beneficial interest in both the invention and in the monopoly when it should be granted. Robinson on Patents, Vol. 2, p. 521. The corporation as such assignee had therefore the right to grant to the intervener the sole and exclusive license to make and distribute one of the inventions, unless the granting of such license was either expressly or impliedly forbidden by other terms of the contract between the plaintiff and the defendant company. 30 Cyc. 943; Robinson on Patents, Vol. 2, pp. 522, 523. No express prohibition of the granting of such license is to be found in the contract. Nor do we think that any such prohibition can be fairly implied. The corporation did not agree to manufacture or distribute the inventions. Undoubtedly it possessed the power to do so, and it was contemplated that it might do so. The contract of May 21st, in addition to providing for conferring upon the corporation the right to use, make and sell, also specifically included the right to lease, rent, market, distribute, handle and dispose of said inventions, in any and every way. Not only so, but it provided that the corporation might cause either of these things to be done. The assignments ran also to "its successors and assigns." The means by which the inventions should so be developed and handled was to be determined by the board of directors, according to the express provisions of the contract. Nor is there anything in the royalty provision in conflict with the ex-

istence of these broad rights on the part of the corporation. Robinson on Patents, Vol. 2, p. 521, § 764. The royalty is not imposed upon the sale of the inventions, but upon the income of the corporation from the making, using, selling, handling or disposing of the inventions. It is manifest from the terms of the agreement that the plaintiff did not seek by the terms of the contract to restrict the corporation as to the means it should employ in the development and marketing of his inventions, nor as to the agencies which it should enlist for that purpose. He rather chose to rely in that regard upon the discretion of the board of directors, of which he was to be a member, and the personnel of which he was to control in some measure by his stock ownership.

Whether or not this was an improvident contract from the standpoint of the inventor, we must enforce it as we find it, and we think that under its terms the Universal Rotary Bit Company clearly had the right to enter into the contracts with the interveners.

The issues of fact having been resolved by the trial court against the plaintiff in error, and no errors of law appearing, the judgment must be affirmed.

MR. CHIEF JUSTICE DENISON, MR JUSTICE BURKE, and MR. JUSTICE WHITFORD, concur.