No. 21036.

EMMETT THURMON *v.* FRANCIS SKIPTON AND ALBERTA M. SKIPTON.
(403 P.2d 211)

Decided June 21, 1965.

424

PAUL G. WEST, for plaintiff in error.

AKOLT, SHEPHERD and DICK, for defendants in error.

*En Banc.*

MR. JUSTICE SCHAUER delivered the opinion of the Court.

THE parties appear here in the same order as they appeared in the trial court and, for convenience, will be referred to as they there appeared, or by name, or as seller or purchaser. When we refer to "Skipton," the reference is to Francis Skipton, the husband.

This is an action for specific performance and damages for breach of a real estate purchase contract. Trial was had to the court and judgment was rendered adverse to the plaintiff, who prosecutes this writ of error.

In summary, the facts are as follows:

On April 5, 1961, the parties entered into a written contract by the terms of which the Skiptons agreed to sell and Thurmon agreed to buy certain lands, improvements and personal property in Elbert County, Colorado. The lands were described partly by legal descriptions and partly by metes and bounds, "containing approximately 1311 acres." The property was further described as "being known as the Francis Skipton property." Certain mineral rights were reserved. The agreed purchase price was "to be determined at $60.00 per acre, to be adjusted above or below the above-mentioned 1311 acres." The parties agreed at the trial that the property to be conveyed constituted all of the property owned by the Skiptons in Elbert County.

Under the terms of the contract, abstracts of title were to be furnished to the purchaser on or before April 5, 1961, showing merchantable title in the sellers. Upon notice of defects in the title, the sellers were granted 120 days in which to render the title merchantable. The abstracts were furnished within the time specified, and a written opinion showing alleged defects in the title was served upon the Skiptons, but they took no action toward remedying the alleged defects.

The purchase price was fixed at $78,660.00, being $60.00 per acre for the 1311 acres, subject to adjustment. The down payment, in the amount of $2500.00, was fixed, paid and receipted for at the time the contract was executed. An additional payment of $5,000.00 be-

came "* * * payable by cashier's or certified check on or before delivery of deed * * *." The balance of $71,160.00, subject to adjustment, was to be represented by the promissory note of the plaintiff secured by a first deed of trust on the property conveyed. Plaintiff made the down payment and offered to make the additional $5,000.00 payment within the prescribed time limit, but the offer was refused by the defendants.

Thurmon visited and viewed the premises in the presence of Skipton, who then and there pointed out the boundaries, but no mention was made of exceptions within the boundaries. Later, a dispute arose over the question whether a strip of land approximately 132 feet wide and 3200 feet long, containing approximately 8.36 acres, should be included in the property to be conveyed. The undisputed evidence of a competent engineer and surveyor was to the effect that the strip was not included in the land description in the contract, but was included in the 1311 acres to be conveyed.

It became necessary to determine the exact acreage of the lands to be conveyed because plaintiff was paying $60.00 per acre for the land to be actually conveyed. No survey was expressly provided for in the contract. Defendants were to convey a merchantable title and, by inference, the determination of this acreage was essential.

The parties could not agree as to who should pay the cost of the survey. Plaintiff thereupon advised defendants' attorney that he, the plaintiff, would make the additional $5,000.00 payment, accept defendants' warranty deed, execute the promissory note and deed of trust provided for in the contract and pay all the expense of the necessary proceedings to remove the title defects complained of; furthermore, if the Skiptons would not repay this expense, he, Thurmon, would then bring an independent action against the defendants for this expense, including the expense of the necessary

survey to establish the actual acreage for which he was to pay. Skiptons' attorney replied:

"There is no use of us discussing it any further. My client isn't going ahead with the deal, and they are not going to close it for any amount. What would you take to settle it?"

The instant action was then instituted.

The plaintiff was required to elect as between his action for specific performance and his action for damages, which had been commingled in one count of plaintiff's complaint. Plaintiff elected to proceed on his complaint for specific performance only, and the court so directed.

■ At the outset of the trial, counsel for Thurmon moved to amend his complaint to include within the land description the strip of land concerning which a controversy had arisen, as was pointed out above. The court denied the motion. We are of the opinion that the court erred in so ruling. The law of this state permits liberality in dealing with requests to amend pleadings in the furtherance of justice. The defendants herein would not have been prejudiced by an amendment "* * * to include such property as the defendants may own * * *" when the contract used the phrase "* * * known as the Francis Skipton property" as a part of the description of the property to be conveyed. The error, however, was harmless under our view of the case.

The evidence is clear that Thurmon met all the obligations imposed upon him by the contract, except when prevented from doing so by the Skiptons. He was ready, willing and able to perform his part of the contract on April 15, 1961, as the contract provided, and is still ready, willing and able to do so. The Skiptons were not willing to perform their obligations at that time, or when the action was brought, or at the time of trial. They were given ample time after their default within which to perform, and there is nothing in the record that would justify their failure to do so.

The trial court permitted the plaintiff to recover his down payment on a finding of misunderstanding. No explanation was given as to what was mutually misunderstood. Therefore, it is impossible to determine whether there is or is not support in the record for the finding of mutual misunderstanding.

■ The finding of the trial court giving rise to a ruling in favor of the defendants and denying specific performance, as prayed for by the plaintiff, may be summarized to the effect that there was no agreement between the parties as to who would pay the cost of a survey, and that since this was a requirement made by the plaintiff, the defendants were justified in refusing to perform the contract. This finding is not supported in the record.

The requirements were that seller was to furnish abstracts, purchaser was to examine and advise as to objections in the title and then the seller had a given time in which to make corrections — in this case, 120 days. This procedure was followed up to the time the seller refused to make the corrections of the title to meet the objections to the title made by the purchaser. The validity of the objections made was testified to by two qualified lawyers without objection and without one word of contradiction. The only issue out of the ordinary requirements had to do with a determination of the exact amount of acres in a small portion of land in order to adjust the total purchase price of $78,660.00, which was based on $60.00 per acre. On this point also, the testimony is uncontroverted that the only "requirement" regarding a survey is to the effect that evidence must be submitted, as to the small portion, in order to determine the exact acreage to be conveyed pursuant to the contract. It is to be noted that this controversy arose over a portion of land estimated to be about eight and one-half acres. This represented a rather insignificant matter by comparison to the total ranch in the amount of 1311 acres.

It is also most pertinent to a determination of the issues in this case to note that the purchaser agreed to take the title without exception if counsel for the defendants would sign an opinion certifying good title. This the seller's attorney refused to do. Moreover, the record reflects that the purchaser performed within the time required in the contract and indeed offered to make the $5,000.00 payment prior to the expiration of 120 days — in fact, prior to April 15 — which was refused by seller's attorney.

■ The law is well set forth in the case of *Miller v. Carmody,* 152 Colo. 353, 384 P.2d 77:

"In summary, in order for Miller to maintain a suit on this option agreement he must have himself first performed, or offered to perform, or shown sufficient excuse for not performing, all of the conditions required of him by the agreement. * * *."

■ Circumstances had changed between the time of the negotiations which resulted in the contract and the time they had bound themselves to perform. Skipton admitted to the real estate broker who had handled the deal that he, Skipton, had heard that the Coor's Porcelain Division, in Golden, had found a deposit of clay on his property that would be useful in the manufacture of porcelain products, and which would enhance the value of his property. On one occasion he visited Olsen, the agent of the real estate firm that had handled the transaction, with the avowed purpose of begging Olsen to use his influence with the head of that firm to secure the cancellation of the contract. This was subsequent to the time that the clay deposit had been found upon the Skipton property. Courts will enforce a contract as made, regardless of whether it is an improvident one from the standpoint of one of the parties. *Seifert v. Gildersleeve,* 84 Colo. 31, 268 Pac. 589.

■ Pertinent language is found in *Shull v. Sexton,* 154 Colo. 311, 390 P.2d 313:

" 'Reasonable certainty in the ascertainment of the

lands agreed to be conveyed is all that is required.' Matlack v. Arend, 2 N.J. Super. 319, 63 A.2d 812. 'If the writing contains indicia by reference to which, coupled with the defective designation otherwise, the identity of the premises can reasonably be determined, specific performance may be decreed.' Ross v. Purse, *supra*. [17 Colo. 24, 28 Pac. 473.]

"'* * * 'Everyone connected with the deal knew what land was involved, * * *.' Boyd v. McElroy, 105 Colo. 527, 100 P.2d 624.

* * *

"In Swedish-American Nat. Bank v. Merz, *supra,* quite similar language was construed. * * *. The Court questioned whether manner and form of payment were essential parts of the contract, concluding:

'* * * The real test as to whether the contract is complete is: Can it be specifically performed? Can it be specifically enforced? The vendor can be told to convey and the vendee can be told to pay simultaneously, all within the language and clear legal meaning of the contract, option, and acceptance.' "

In the case at bar, the transfer of the total ranch owned by the defendants was clearly intended by both the vendor and the vendee. This clear intent is found in the language of the written agreement and supported by the testimony of both of the parties.

The language of the agreement giving the purchaser the right for specific performance reads as follows:

"'* * * if title is not merchantable and written notice of defects is given to seller or agent within the time herein provided for delivery of deed, and shall not be rendered merchantable within 120 days from such written notice, then this contract, *at purchaser's option,* shall be void and of no effect." (Emphasis supplied.)

The record discloses the following undisputed relevant testimony:

"Q  Mr. Thurmon, are you ready, willing and able to perform this contract?

"A   Yes, and I always have been ever since we signed the contract."

Cross-examination of defendant:

"Q   You intended to sell the entire ranch?

"A   Yes sir.

"Q   You were going to sell everything that you owned?

"A   Yes, sir."

■ The demand for specific performance constitutes an assertion by the plaintiff for performance pursuant to the actual agreement of the parties. It is undisputed that the agreement was signed by the parties after considerable negotiation. There is no dispute as to the material terms of the agreement. We therefore hold that the remedy of specific performance is proper, and should be enforced upon the state of the record before us.

It is ordered that a decree enter requiring defendants to convey to plaintiff by warranty deed the real estate and personal property described in the contract, upon tender by plaintiff to defendants of the sum of $5,000.00 additional payment due from plaintiff under its terms; that there be execution and delivery by plaintiff to defendants of the promissory note for the balance of the agreed purchase price, and that a first deed of trust on the property be executed to secure the payment of the note. This purchase price shall be based upon $60.00 per acre for 1311 acres.

■ We express no opinion as to the propriety of plaintiff's proposed independent action against defendants for the expense of removing the alleged title defects and a survey which would definitely determine the actual acreage of the Skipton ranch. If the actual acreage is so determined equity would require an adjustment of the purchase price so that plaintiff would be required to pay for any excess over 1311 acres, at $60.00 per acre, and defendants would be required to repay plaintiff for any deficiency at the same price.

The judgment of the trial court is reversed and the

cause remanded for further proceedings consonant with the views herein expressed.