NEVILLE ENTERPRISES, LTD., a Colorado Corporation, John G. Neville, Patricia M. Neville, and Marie L. Vial, Partners, Plaintiffs-Appellants,

v.

Charles P. RAHE and Ruth Ann Rahe, Defendants-Appellees.

No. 80CA1070.

Colorado Court of Appeals, Div. II.

July 2, 1981.

Williams, Trine, Greenstein & Griffith, P. C., David W. Griffith, Boulder, for plaintiffs-appellants.

Skaggs, Stone & Sheehy, David E. Skaggs, Boulder, for defendants-appellees.

STERNBERG, Judge.

The issue in this appeal is whether sellers of real property under a "wrap-around" mortgage[1] are entitled to a credit from the buyers for the tax and insurance escrow established under the underlying deed of trust. The trial court held that they were and refused to grant the buyers' claim for specific performance of a contract for the sale of the property. We affirm.

The purchase and sale contract executed by the parties called for purchase money "wrap-around" financing to be provided by the sellers, with the promissory note and deed of trust to be executed at closing. The closing statements credited the buyers for taxes accrued through the closing date and debited the buyers for pre-paid premiums on insurance policies which were being assumed. Some $5,938.03 escrowed by the sellers for payment of insurance and taxes pursuant to the terms of an underlying promissory note and deed of trust were neither credited to the sellers nor debited to the buyers. At the closing, a dispute arose with regard to proper treatment of this escrow reserve. The sellers insisted that the agreement of the parties required purchase of or credit for the escrowed funds. The buyers refused to tender the $5,938 and, as a result, the sale was not closed.

Thereafter, the buyers brought suit to compel specific performance of the contract. The trial court construed the contract to require the buyers to purchase or otherwise credit the sellers for the escrowed funds as a condition precedent to the sale and, therefore, entered judgment for the sellers.

To determine if ambiguity exists in the contract of sale it is necessary to examine the language used therein by reference to all parts of the agreement, *Aronoff v. Western Federal Savings & Loan Ass'n*, 28

---

1. "[A] wrap-around mortgage is one in which the lender gives a loan secured by a mortgage on property that is already encumbered by a first mortgage. The face amount of the new loan includes the remaining principal on the existing first mortgage, plus the amount being advanced on the second. The interest payable to the second mortgage is computed on this total amount. The second mortgagee, in turn, makes the payments required by the terms of the first mortgage directly to the first mortgagee. The wrap-around lender sometimes assumes the first mortgage, although this is not always the case." 3 *R. Powell, The Law of Real Property* ¶ 475.7 (P. Rohan rev. 1979). *See Gunning & Roegge, Contemporary Real Estate Financing Techniques*, 3 *Real Property, Probate & Trust J.* 325 (1968).

Colo.App. 151, 470 P.2d 889 (1970), and to take into account the subject matter of the transaction. *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965). Based on this standard, we conclude that the integrated contract, consisting in relevant part of the purchase and sale contract, the promissory note, and deed of trust, is ambiguous.

Paragraph 7 of the purchase and sale contract states:

"*Prorations.* Real property and personal property taxes for the year of closing shall be apportioned to date of closing based on the most recent levy and the most recent assessment. Prepaid rents, water rents, utilities, and insurance, if any, shall be apportioned to the date of closing."

Read together with covenant (c) of the deed of trust, which obligates the buyer "to pay all taxes and assessments levied on the property within the times allowed by law," the agreement of the parties appears to entitle the buyers to offset a pro rata share of the taxes and insurance for the year of purchase. However, paragraph 5 of the promissory note imposes on the buyers an obligation to pay sellers "in monthly installments, $\frac{1}{12}$ of the annual costs for real property taxes and hazard insurance attributable to the property.

Paragraph 5 indicates that it was within the contemplation of the parties that the sellers, not the buyers, will remit annual taxes and insurance as they come due out of funds furnished by the buyers in monthly installments. Because the sellers remain responsible for making payments due under prior notes and deeds of trust, this interpretation of paragraph 5 is consistent with the wrap-around character of the transaction. *See Powell, supra.* Moreover, this interpretation minimizes the risk that a default on the buyers' obligation under covenant (c) will impair the security interest which, as lenders, the sellers retain in the subject property.

Accordingly, since the sellers' pro rata share of the payments was offset against the cash due from the buyers, as paragraph 7 and covenant (c) contemplate, and since the sellers are obligated to pay the entire amount of taxes for the year of sale under paragraph 5, the sellers are entitled to be paid for the amount in escrow.

Nevertheless, the buyers maintain that they are entitled to specific performance. We do not agree. The purchase and sale contract provided: "In the event a payment or any other condition hereof is not made, tendered, or performed by purchaser, then this contract shall be null and void and of no effect, and both parties hereto shall be released from all obligations hereunder . . . ." Application of this provision precludes specific enforcement of the contract where, as here, the buyers refused to pay for the escrowed reserves.

Citing *Thurmon v. Skipton*, 157 Colo. 423, 403 P.2d 211 (1965), buyers argue that the breach here is trivial and, therefore, excusable. But, that case is distinguishable. There, the buyer "met all obligations imposed upon him by the contract, except when prevented from doing so by the [sellers]." Here, the buyers did not meet their obligations.

Judgment affirmed.

PIERCE and TURSI, JJ., concur.