L & M ENTERPRISES, INC., Plaintiff,

v.

The HARTFORD ACCIDENT AND
INDEMNITY COMPANY,
Defendant.

Civ. A. No. 87–C–1435.

United States District Court,
D. Colorado.

Nov. 25, 1988.

Gerald P. McDermott, Denver, Colo.,
Stanley T. Matsunaka, Loveland, Colo., for
plaintiff.

David D. Schlachter, Denver, Colo., for
defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff L & M Enterprises, Inc. ("L & M") commenced this action against the defendant Hartford Accident and Indemnity Company ("Hartford") seeking to recover damages arising out of Hartford's refusal to issue performance and payment bonds on behalf of the plaintiff. Diversity jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1332.

The following facts appear undisputed: Plaintiff is a landscape contractor based in Berthoud, Colorado. In 1982, it sought to establish a bonding "line of credit" with the defendant Hartford, a Connecticut corporation operating in Colorado. Defendant agreed to consider applications for bonds submitted by the plaintiff on a case by case basis. On March 25, 1982, the parties entered into a General Indemnity Agreement.

In late July 1986, the plaintiff decided to place a bid with the State of Wyoming on a limestone reclamation project known as the Horse Creek Mine Project (the "Horse Creek project"). On July 28, 1986, L & M submitted a request for a bid bond covering the Horse Creek project to Hartford through the Talbert Corporation ("Talbert").

Talbert is an authorized agent of the defendant located in Denver, Colorado. Defendant had authorized Talbert to issue bonds on behalf of the plaintiff in an amount up to $1,500,000 on a single project. In the event that the plaintiff requested a bond for a project with a contract price of more than $1,500,000, Talbert needed to obtain approval of the bond from Hartford's regional office in Denver before it could issue the bond.

Because the contract price of the Horse Creek project exceeded $1,500,000, Talbert sought approval of the plaintiff's bid bond request from Hartford's regional office. After determining that the request was within the regional office's contract of authority, it authorized the issuance of the bid bond, and the bid bond was issued.

The bids for the Horse Creek project were opened on July 29, 1986. Plaintiff's bid was in the amount of $2,256,338.90, and it was the lowest. The next two lowest bids were in the amounts of $3,786,679 and $4,616,126.

Upon learning of the bid spread, Doug Campbell, of Hartford's regional office, met with representatives of the plaintiff and received additional information concerning the project and the plaintiff's bid. During this meeting, representatives of the plaintiff told Campbell that L & M would request performance and payment bonds from the defendant if the project was awarded.

On August 11, 1986, the State of Wyoming awarded the project to L & M, and directed L & M to provide performance and payment bonds within 20 days. Under Hartford's procedures, the home office needed to approve the issuance of a performance or payment bond if the contractor had submitted a low bid that was less than the second lowest bidder by more than (1) ten percent and (2) two hundred thousand dollars. Accordingly, Campbell forwarded the plaintiff's request for performance and payment bonds to Hartford's home office.

After reviewing the project and the plaintiff's bid, Hartford's home office decided not to issue the performance and payment bonds, and communicated this decision to the plaintiff on August 12, 1988. Subsequently, L & M advised the defendant of its belief that the State of Wyoming would make a claim on the bid bond since L & M was unable to provide performance and payment bonds, and requested the defendant to reconsider its decision. Hartford reconsidered and on September 26, 1986, it agreed to issue performance and payment bonds subject to certain conditions. How-ever, the plaintiff refused to agree to all of the conditions. Accordingly, the performance and payment bonds were not issued.

The State of Wyoming then contracted with the second lowest bidder and made a demand on Hartford's bid bond. Defendant paid the State $25,000, and, pursuant to the terms of the General Indemnity Agreement, was reimbursed by the plaintiff in the amount of $25,000.

Plaintiff then commenced this action against Hartford. The amended complaint asserts four claims for relief. The first claim alleges breach of an express contract to issue performance and payment bonds. The second claim alleges breach of an implied contract to issue performance and payment bonds. The third claim alleges tortious interference with contractual relations. The fourth claim alleges tortious or bad faith refusal to issue a payment or performance bond.

Currently pending is the defendant Hartford's motion for summary judgment. The parties have briefed the issues and oral argument would not materially assist my decision.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett* the Court held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. The Court explained:

"In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving par-

ty is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof." *Id.* at 322–23, 106 S.Ct. at 2553.

Defendant contends that summary judgment should be granted in its favor on all four of the plaintiff's claims. Specifically, it asserts that the the plaintiff's first claim for relief, for breach of an express contract to issue performance and payment bonds, must fail because the agreement between the plaintiff and the defendant is contained in the unambiguous language of the General Indemnity Agreement, and that Agreement expressly provides that Hartford is not obligated to issue any bond.

Defendant next asserts that the second claim, for breach of implied contract to issue performance and payment bonds, must also fail because where an express contract exists parties cannot abandon the express contract and rely on an implied contract.

Defendant contends that the third claim, for tortious interference with contractual relations, must fail because the plaintiff fails to allege an existing contract between the plaintiff and a third party. Finally, the defendant asserts that the plaintiff's fourth claim, for bad faith refusal to issue performance and payment bonds, must be dismissed because the Colorado courts do not recognize such a claim absent the existence of an insurance contract relationship.

I begin by addressing the defendant's contention that the plaintiff's claim for breach of express contract must be dismissed because the contract entered into by the plaintiff and the defendant did not require the defendant to issue performance or payment bonds.

Section 3 of the General Indemnity Agreement between the plaintiff and the defendant states as follows:

> "The surety may decline to execute *any bond* for which request is made *without incurring any liability* and without affecting the obligations of the indemnitors with respect to any other bond or bonds issued hereunder." (Emphasis added.)

Importantly, the bid bond issued by the defendant on the Horse Creek project neither referred to nor altered the above-quoted language.

"Ordinarily the construction of a contract is a question of law for the court." *People v. Johnson*, 618 P.2d 262, 266 (Colo.1980); *see also GTM Investments v. Depot, Inc.*, 694 P.2d 379, 381–82 (Colo.App.1984). "Where the meaning of the agreement is clear on its face there is nothing to interpret it and it must be enforced as written." *Johnson*, at 266; *Bennett v. Price*, 692 P.2d 1138, 1139 (Colo.App.1984). Whether or not a contract is ambiguous is a question of law for the court. *Id.*

■ The General Indemnity Agreement clearly states the rights and duties of the parties, including the obligation of the defendant regarding the issuance of bonds. According to the express language of the Agreement, Hartford may decline to issue any bond for which a request is made, without being subject to liability for such a decision. This express language must be enforced as written. *See Thurmon v. Skipton*, 157 Colo. 423, 403 P.2d 211 (1965) (courts will enforce contracts as made, regardless of whether it is improvident from standpoint of one of parties); *Bowman v. Reyburn*, 115 Colo. 82, 170 P.2d 271 (1946) (contract must be enforced according to its terms, and a court is without authority to compel a party to do something it did not contract to do).

I therefore conclude that the plaintiff's claim for breach of express contract must be dismissed.

■ I similarly conclude that the plaintiff's claim for breach of implied contract must be dismissed. "Where an express contract and an asserted implied contract co-exist and relate to the same subject matter, there can be no implied contract between the parties because the provisions of the express contract supersede those of the implied contract." *Schuck Corp. v. Sorkowitz*, 686 P.2d 1366, 1368 (Colo.App. 1984). The implied contract alleged by the plaintiff to exist clearly relates to the same subject matter covered by § 3 of the Gen-

eral Indemnity Agreement. Accordingly, the plaintiff cannot state a claim for breach of an implied contract.

Plaintiff raises several other legal theories in support of its contention that the language of the General Indemnity Agreement should not control this dispute. Specifically, it argues:

"There is a factual dispute as to whether the parties had entered into an agreement, the terms of the agreement, the question of whether the parties had an implied agreement, and whether the defendant by its conduct is estopped from denying the existence of an implied agreement and the waiver of performance of any express agreement...." (Response, at 13.)

After reviewing the pleadings, briefs and other documents submitted, I conclude that these arguments are without merit, and that the first and second claims for relief, which assert claims for breach of contract, must be dismissed.[1] Based on my conclusion that the defendant, as a matter of law, acted within its rights in refusing to issue performance and payment bonds, and my review of the documents referred to above, I conclude that the plaintiff's third and fourth claims must also be dismissed.

Accordingly, IT IS ORDERED that:

(1) Defendant's motion for summary judgment is granted; and

(2) The first amended complaint and this action are dismissed with prejudice.

---

[1.] Plaintiff's several equitable arguments in favor of holding Hartford liable for its refusal to issue performance and payment bonds essentially assert that it was unfair of Hartford to refuse to issue the performance and payment bonds after it had agreed to issue the bid bond. However, the plaintiff's own brief in response to the motion for summary judgment supports my decision that the plaintiff's equitable claims for relief are without merit. In its brief, the plaintiff describes Hartford's bond review process. (A summary of the process is described at the beginning of this order.) As acknowledged by the plaintiff, there are situations in which Hartford's regional office is authorized to give final approval on the issuance of a bid bond for a particular project, but is not authorized to give final approval for the issuance of performance and payment bonds for that project. Rather, Hartford's home office must give approval in the latter instances.

Thus in the present case, Hartford's regional office was authorized to, and in fact did, approve issuance of the bid bond, and the home office did not even review the request. However, as conceded by the plaintiff, the home office was required to approve the plaintiff's request for performance and payment bonds. The logical result of the plaintiff's equitable arguments would render meaningless the requirement of home office approval for performance and payment bonds because the home office would be required to approve the issuance of the performance and payment bonds in every case where the regional office previously had decided to issue the bid bond.

Despite the plaintiff's arguments to the contrary, it is clear that the agreement entered into between the plaintiff and the defendant envisioned that the defendant could refuse to issue performance and payment bonds on a project for which it had previously issued a bid bond.